# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE-OPELOUSAS DIVISION

| KENNETH A. VINCENT | * | CIVIL ACTION NO. 05-1111 |
|---|---|---|
| VERSUS | * | JUDGE DOHERTY |
| COMMISSIONER OF SOCIAL SECURITY | * | MAGISTRATE JUDGE HILL |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Kenneth A. Vincent, born January 26, 1959, filed an application for disability insurance benefits on February 6, 1995, alleging disability as of August 24, 1994, due to a deteriorating disc, bulging disc, and headaches. By decision dated July 17, 1997, claimant was found disabled. On continuing disability review, claimant was found to have realized medical improvement as of August 1, 2002; therefore, his benefits were ceased as of October 31, 2002. (Tr. 336, 345, 367-378).

After a Disability Hearing Officer upheld the cessation, claimant requested a hearing before an Administrative Law Judge ("ALJ"). On March 21, 2005, the ALJ issued a decision affirming the cessation of benefits. Following denial of review by the Appeals Council, claimant filed for judicial review with this Court.

FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the Commissioner's decision comports with all relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of F.R.Civ.P. 52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows:[1]

**(1) Records from Dr. Michel E. Heard and Dr. Louis Blanda dated October 13, 1994 to September 25, 2002**. On October 13, 1994, claimant was seen for low back pain after he was injured while working offshore on August 24, 1994. (Tr. 127). A CT scan dated February 6, 1996, revealed a mild disc bulge at L5-L6 with bilateral spondyloysis at L6, with a Grade I spondylolisthesis. (Tr. 203, 205). On August 12, 1996, Dr. Louis Blanda performed a laminectomy and fusion. (Tr. 206-07). In a sworn statement dated June 25, 1997, Dr. Heard opined that he considered claimant disabled from employment at that time. (Tr. 301, 304).

---

[1] Although all of the medical records were reviewed by the undersigned, only those relating to the cessation of benefits are summarized herein.

On August 6, 2001, claimant complained of severe neck pain, moderate to severe low back pain radiating to the legs and feet, and severe headaches. (Tr. 436). Dr. Heard prescribed Celebrex and Flexeril.

On March 5, 2002, claimant complained of moderate to severe neck pain radiating to the right arm, moderate to severe low back radiating to the right lower leg and foot, and moderate, intermittent headaches. (Tr. 435). Dr. Heard's impression was chronic pain syndrome with neck pain, low back pain, and headaches. He prescribed Celebrex and Flexeril. He opined that claimant remained unable to work.

On September 4, 2002, claimant reported severe neck pain radiating to the right arm, moderate to severe low back pain radiating to the right leg and foot, and moderate to severe, intermittent headaches. (Tr. 434). Dr. Heard's impression was chronic pain syndrome with neck pain, low back pain, and headaches, status-post laminectomy and fusion with lumbar radiculitis. He recommended an MRI.

An MRI dated September 25, 2002, showed persisting degenerative disc disease at C5-6 with osteophyte and bulge causing mild stenosis of the central canal and slight encroaching the neural foramina, and a persisting right paracentral disc bulge at C6-7. (Tr. 440). A lumbar MRI showed post-laminectomy changes, a zone of apparent epidural fibrosis posterolaterally at L4-5, a mild L4-5 disc bulge, and no evidence of disc herniation or spinal stenosis. (Tr. 441).

**(2) Residual Functional Capacity ("RFC") Assessment dated August 26, 2002**. The medical consultant determined that claimant could occasionally lift/carry 20 pounds and frequently carry 10 pounds. (Tr. 338). He found that claimant could stand/walk and sit about 6 hours in an 8-hour workday. He stated that claimant had unlimited push/pull ability. He also determined that claimant could occasionally perform all postural activities. (Tr. 339).

The medical consultant opined that claimant's statements were only partially credible since there was not a lot of physical evidence substantiating his complaints. (Tr. 342). He did not feel that claimant's alleged pain was enough to warrant a listing. (Tr. 343).

**(3) Consultative Orthopedic Examination by Dr. Lucius Craig dated August 3, 2002**. Claimant complained of neck pain, back pain, and constant headaches. (Tr. 437). He also wore glasses and had a history of ulcers. He stated that he could drive and perform some household chores. He could sit for 1 hour, stand for 30 minutes, walk 2 or 3 blocks, and lift between 20 and 30 pounds. He had no trouble hearing, speaking, or handling objects with his hands.

On examination, claimant was 67 inches tall and weighed 265 pounds. His blood pressure was 147/91. He ambulated well, and got on and off of the examination table and up and out of the chair without difficulty. He was able to dress

and undress without any problems.

Claimant had 2+ pulses in the feet and upper extremities. (Tr. 438). He had no signs of edema, cyanosis, or clubbing. He had a normal gait. Grip strength was 5/5 in the upper extremities with no sign of atrophy or deformity.

Range of motion in the upper extremities and shoulders was normal. Claimant had negative straight leg raising. He was able to rise on his heels and toes, squat, and heel to toe walk without any problems. He had visible varicosities in his lower extremities. Claimant had 5/5 muscle strength, and no atrophy in the lower extremities.

Mentally, claimant was normal. He was able to follow simple directions and perform simple calculations.

Claimant had normal sensibility throughout his upper and lower extremities. He had normal cerebellar function. Cranial nerves were intact. He had 2+ deep tendon reflexes throughout the extremities.

X-rays showed decreased disk space at L5-S1 with facet arthropathy. Dr. Craig noted that claimant had signs of laminectomy performed at this level and signs of degenerative joint disease.

Dr. Craig's impression was that claimant had full range of motion in his upper and lower extremities. (Tr. 438-39). He noted that claimant could rise to his tip toes

and walk on his heels. (Tr. 439). He found that claimant had normal range of motion of his lower back. Dr. Craig concluded that claimant's only limitation was secondary to pain.

**(4) Records from University Medical Center ("UMC") dated September 4, 2003 to November 12, 2004**. On September 4, 2003, claimant complained of right foot pain and swelling. (Tr. 475-76). X-rays of the right ankle showed soft tissue swelling without evidence of fracture or dislocation, and mild degenerative changes. (Tr. 479).

On September 25, 2004, claimant complained of intermittent low back pain shooting into the hips and lower extremities causing difficulty with ambulation. (Tr. 467-69). An MRI dated November 12, 2004, showed a small posterior central disc herniation at L5-S1 and slight spondylolisthesis at L5. (Tr. 483).

**(5) Claimant's Administrative Hearing Testimony**. At the hearing on October 19, 2004, claimant was 45 years old. (Tr. 23). He was a high school graduate. Claimant testified that he had tried to go to trade school in 2001 for computers, but could not pass the test.[2] (Tr. 25).

---

[2]Claimant had past work experience as a floor hand, a roughneck, shaker hand, and motorman. (Tr. 92-96, 98-100, 433).

Regarding complaints, claimant testified that he had trouble with varicose veins, for which he wore support stockings. (Tr. 23, 28). He stated that he had recently gone to UMC to request an MRI because of shooting pain in his leg, neck stiffness, and bad headaches. (Tr. 24).

Additionally, claimant testified that he had trouble seeing because of diabetes. (Tr. 26). He said that he was being treated by Dr. Carl Richard for diabetes and varicose veins. (Tr. 27). He reported that he had not been treated by Dr. Heard for a while because he could not afford it. (Tr. 28). Afterwards, he was treated at UMC.

As to medications, claimantsstated that he took muscle relaxers when his neck became stiff, and Celebrex for back pain. (Tr. 30). He complained that the Celebrex upset his stomach.

Regarding limitations, claimant reported that he could stand for about an hour before his legs started hurting. (Tr. 29). He stated that he had to lie down two or three times a day because of pain. (Tr. 31). He testified that his doctor had placed him on a special diet for diabetes. He complained that his condition had become worse.

**(6) Administrative Hearing Testimony of Dr. George Smith, Medical Expert ("ME")**. Dr. Smith reported that claimant did not have a lot of objective findings at the time that he had surgery. (Tr. 33-34). He stated that the imaging

7

studies from 2002 did not really look that much different from those done almost 8 to 10 years prior, except for the surgical changes. (Tr. 34). He noted that there was no longer spondylosis, but there were still complaints of pain and tenderness on palpation. Dr. Smith concluded that he did not see anything in the record indicating that claimant met the listing of impairments either in the old record or the new one. (Tr. 38).

When the ALJ asked whether claimant had medically improved, Dr. Smith testified that the persistence of pain was not an improvement from the standpoint of neurological deficits as a result of an injury. However, he clarified that there was nothing to improve from because the prior physicians had recorded no deficits. Dr. Smith confirmed that a year was a good time to allow the fusion to become solid post-surgery. (Tr. 39).

**(7) The ALJ's Findings are Entitled to Deference**. Claimant argues: (1) there was no substantial evidence to support a determination of substantial medical improvement affecting work ability, and (2) the ALJ erred in relying upon the Medical/Vocational Guidelines when claimant clearly had a non-exertional limitation resulting from his inability to sit, stand, or walk for any extended periods of time.

As to the first argument, claimant contends that the ALJ relied solely on the consultative examination performed by Dr. Craig, at which time no film studies or

tests were done. (rec. doc. 16, p. 2). However, Dr. Craig's report clearly indicates that he took x-rays, which showed decreased disk space at L5-S1 with facet arthropathy. (Tr. 438). Dr. Craig found that claimant had full range of motion in his upper and lower extremities, could rise to his tip toes and walk on his heels, and had normal range of motion of his lower back. (Tr. 438-39). He concluded that claimant's only limitation was secondary to pain. (Tr. 439).

Additionally, the record reflects that not only did the ALJ rely on the examination performed by Dr. Craig, but he also cited the latest diagnostic test results from Dr. Heard and UMC. (Tr. 14). The latest cervical MRI ordered by Dr. Heard dated September 25, 2002, showed persisting degenerative disc disease at C5-6 with osteophyte and bulge causing "*mild* stenosis of the central canal and *slightly* encroaching the neural foramina," and a persistent right paracentral disc bulge at C6-7. (emphasis added). (Tr. 440). A lumbar MRI on the same date showed post-laminectomy changes, a zone of apparent epidural fibrosis posterolaterally at L4-5, "a *mild* L4-5 disc bulge," and "*no* evidence of disc herniation or spinal stenosis." (emphasis added). (Tr. 441). The MRI from UMC dated November 12, 2004, showed a "*small* posterior central disc herniation at L5-S1" and "*slight* spondylolisthesis at L5." (emphasis added). (Tr. 483).

Besides these tests, the ALJ relied on the records after the comparison point decision of July 17, 1997, indicating that claimant had had infrequent treatment for complaints of back pain subsequent to that time. (Tr. 14). He noted that Dr. Craig's examination revealed no signs of diminished muscle strength or atrophy, showed only minimally decreased range of motion of the back and neck, and demonstrated full range of motion of the upper and lower extremities. (Tr. 14-15, 438-39). Additionally, the record reflects that after claimant's MRI with Dr. Heard in September, 2002, he not was treated for back pain until September, 2004 at UMC. (Tr. 440-41, 467-70, 483). The ALJ further noted that UMC's records indicated that claimant was only taking Celebrex, which is a nonsteroidal anti-inflammatory drug, and no pain medication. (Tr. 15, 467, 475). The ALJ is not precluded from relying upon the lack of treatment as an indication of nondisability. *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990); C*hester v. Callahan*, 193 F.3d 10, 12 (1st Cir. 1999) (gaps in the medical record regarding treatment can constitute "evidence" for purposes of the disability determination); *McGuire v. Commissioner of Social Security*, 178 F.3d 1295 (6th Cir. 1999) (gaps in treatment may reasonably be viewed as inconsistent with a claim of debilitating symptoms); *Franklin v. Sullivan*, 1993 WL 133774 (E.D. La. 1993); *Ostronski v. Chater*, 94 F.3d 413, 419 (8th Cir. 1996) (reliance on aspirin does not suggest a disabling condition); *Haynes v. Shalala*, 26

F.3d 812, 814 (8th Cir. 1994) (lack of strong medication is inconsistent with subjective complaints of disability); *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir. 1988) (failure to seek aggressive treatment and limited use of prescription medications is not suggestive of disabling condition). As the ALJ's findings are supported by the medical records, they are entitled to deference.

Additionally, claimant argues that the medical expert, Dr. Smith, testified at the hearing that he had found no medical improvement. (rec. doc. 16, p. 2). However, what Dr. Smith actually said was that there were no objective findings supporting surgery in the first place. (Tr. 34). He concluded that "there was nothing to improve from," because the previous physicians had "recorded no deficits, and the spondylo I'm sure pre-existed his injury." (Tr. 38). Thus, this argument lacks merit.

As to the second assignment of error, claimant argues that there is no evidence to support the ALJ's finding as to residual functional capacity. (rec. doc. 16, p. 4). In the decision, the ALJ determined that claimant's assertions regarding his limitations were not entirely credible. (Tr. 16). He noted that claimant had been prescribed only muscle relaxants and anti-inflammatory medication. (Tr. 16). He additionally observed that claimant had sought infrequent medical care since he experiencing medical improvement. Further, he stated that neither Dr. Heard nor any other physician had ordered further testing or treatment after either MRI. Moreover,

11

the ALJ found that claimant showed none of the indices generally associated with patients who suffer from chronic pain. The absence of objective factors indicating the existence of severe pain -- such as limitations in the range of motion, muscular atrophy, or impairment of general nutrition, could itself justify the ALJ's conclusion. *Hollis v. Bowen*, 837 F.2d 1378,1384 (5th Cir. 1988). Thus, the ALJ's finding is entitled to deference.

Finally, claimant argues that the ALJ erred in relying on the Medical/Vocational Guidelines in light of his non-exertional limitation due to pain. (rec. doc. 16, p. 4). However, the regulations provide that the ALJ may rely exclusively on the Guidelines in determining whether there is other work available that the claimant can perform when the characteristics of the claimant correspond to criteria in the Medical-Vocational Guidelines of the regulations, and that claimant either suffers only from exertional impairments *or his non-exertional impairments do not significantly affect his residual functional capacity*. (emphasis added). *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987); 20 C.F.R. § 404.1569 and Part 404, Subpart P, Appendix 2, Section 200.00. Here, the ALJ determined that claimant's non-exertional impairments from pain did not significantly affect his residual functional capacity. (Tr. 17). This finding is supported by the medical evidence. Additionally, as found by the ALJ, claimant's characteristics correspond to the listing

at § 202.20 of Appendix 2, which directs a finding of not disabled for a younger individual who is a high school graduate or more and has unskilled or no work experience. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.20. Thus, the ALJ's decision not to call a vocational expert is entitled to deference.

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT,**

**EXCEPT UPON GROUNDS OF PLAIN ERROR.** *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).

October 3, 2006, Lafayette, Louisiana.

*C. Michael Hill*
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE